UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNION INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NEW ENGLAND ICE CREAM CORPORATION ) <br> ) <br> Defendant ) <br> and ) <br> ) <br> ANGEL PARRILLA RIVERA ) <br> ) <br> Interested-Party Defendant ) <br> ) | Civil Action No.: |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

### **Introduction**

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 in which the plaintiff, Union Insurance Company ("Union"), petitions this Court for declarations that it owes no coverage obligations, defense or indemnity, in connection with an underlying tort action by Angel Parrilla Rivera ("Rivera") against Union's insured, New England Ice Cream Corporation ("NEICC"), entitled *Angel Parrilla Rivera v. New England Ice Cream Corporation*, Civil Action No. 2173CV00033, filed in the Massachusetts Superior Court for Bristol County (the "Underlying Action").

2. This Court has original jurisdiction over this action by reason of diversity of citizenship between Union and the defendants pursuant to the provisions of Title 28 U.S.C. § 1332. Upon information and belief, given the nature of the underlying claims and alleged damages, the amount in controversy exceeds $75,000.

3. Pursuant to 28 U.S.C. § 1391, venue is proper because the defendants are subject to personal jurisdiction in the District of Massachusetts and without a declaration of rights of the parties, Union will be at risk to suffer damages within Massachusetts.

## Parties

4. The Plaintiff, Union, is an Iowa corporation with a principal place of business located in Des Moines, Iowa.

5. The defendant, NEICC, is a Massachusetts corporation with a principal place of business in Norton, Massachusetts.

6. Interested-party defendant, Rivera, is an individual who resides in Taunton, Massachusetts.

## Facts

### *The Employee Leasing Arrangement*

7. On (or about) March 13, 2018, Monroe and NEICC executed a "Monroe Staffing Services General Agreement" (the "Staffing Agreement"). The Staffing Agreement provides (in relevant part):

> [Monroe] is engaged in the business of assigning its own Employees to perform services for [c]lients, and providing related management and human resources services; and [NEICC] desires to engage [Monroe] to provide such services[.]

> \* \* \*

> **1. STAFFING FIRM Duties and Responsibilities**

> [Monroe] shall provide one or more Employees (or Assigned Employees) as requested by [NEICC] from time to time. Such Employees of [Monroe] shall provide services under [NEICC's] management and supervision as a facility or in environment controlled by [NEICC].

> \* \* \*

[Monroe] will

Recruit, screen, interview, hire, and assign its Employees ("Assigned Employees") to perform the type of work as required and described by [NEICC] and will, as the common law employer of Assigned Employees, be responsible for the following:

- A. Pay Assigned Employees' wages and provide them with the benefits that [Monroe] offers to them and required by Federal, State, or Local law;

- B. Pay, withhold, and transmit payroll taxes; social security, Medicare, unemployment and other withholding deductions and payments. Provide unemployment insurance and workers' compensation benefits; and process all unemployment and workers' compensation claims involving Assigned Employees . . . .

\* \* \*

**3.   Payment Terms, Bill Rates, and Fees and Conversion**

[NEICC] will pay [Monroe] for its performance at . . . [agreed-upon] rates . . . . [Monroe] will invoice [NEICC] for services provided under this Agreement on a weekly basis. Invoices will be supported by the pertinent time sheets or other agreed system for documenting the time worked by the Assigned Employees.

8.   NEICC has explained to Union that it "hired Mr. Rivera with the intention of a temp to permanent role. NEICC has been successful hiring temp to perm for our warehouse positions. The extreme cold warehouse environment is not for everybody, this allows NEICC to not invest upfront with employees that might leave the job after several weeks, days or hours. If the employee can do the job then after 90 days we move towards hire for full time employment with NEICC."

9.   On or about April 17, 2019, Rivera completed a Monroe "Employment Application." Shortly thereafter he began working at NEICC's warehouse/distribution center in Norton, Massachusetts.

3

### *The Underlying Action*

10. On January 13, 2021, Rivera filed the Underlying Action against NEICC in Bristol Superior Court (attached hereto as "Exhibit A").

11. Rivera alleges the following facts in his Complaint:

    (a) NEICC owned, operated and/or maintained a refrigerated warehouse located in Norton;

    (b) On or about April 28, 2019, Rivera was working in the course and scope of his employment for Monroe Staffing Services ("Monroe") and was assigned to work as a laborer at NEICC's warehouse;

    (c) NEICC had a duty to: (a) maintain the warehouse in a reasonably safe condition; (b) provide workers with appropriate safety and/or protective equipment; and, (c) warn workers of any dangerous conditions in the warehouse;

    (d) NEICC negligently breached its duties by exposing Rivera to freezing temperatures with inadequate protective clothing and for prolonged periods of time. NEICC also negligently: (a) failed to warn workers of the dangerous conditions in the refrigerated warehouse; (b) failed to enforce safety rules and regulations; (c) failed to adequately supervise work being performed in the refrigerated warehouse; and, (d) failed to adequately train workers; and

    (e) As a direct and proximate result of NEICC's negligence, Rivera has suffered severe personal injuries.

### *The Union Policy*

12. Union issued a policy numbered CPA 5115109-15 to International Ice Cream Corporation for the policy period November 1, 2018, to November 1, 2019 (the "Policy"). The Policy includes an endorsement adding NEICC as a "named insured." The Policy includes commercial general liability insurance subject to occurrence and aggregate limits of $1,000,000 and $2,000,000, respectively ("Exhibit B").

13. The Policy's Insuring Agreement for Coverage A Bodily Injury and Property Damage Liability states (in relevant part):

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages f or "bodily injury" or "property damage" to which this insurance does not apply.

   \*   \*   \*

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

      (2) The "bodily injury" or "property damage" occurs during the policy period.

[Form CG 00 01 04 13, p. 1, Section I Coverage A Insuring Agreement].

14. An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Form CG 00 01 04 13, p. 15].

15. Pursuant to the Bodily Injury Redefined Endorsement, "Bodily injury" means "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' includes mental anguish or other mental injury resulting from "bodily injury" [Form CL CG 24 01 09 16].

16. The "Employer's Liability" exclusion (Exclusion "e.") provides, in relevant part, that "[t]his insurance does not apply to: . . . 'Bodily injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages

with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an 'insured contract'" [Form CG 00 01 04 13, p. 2].

17. The Policy defines "employee" to include a "leased worker," but "does not include a 'temporary worker.'" [Form CG 00 01 04 13, p. 13].

18. A "leased worker" is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker'. [Form CG 00 01 04 13, p. 14].

19. A "temporary worker" is defined to mean "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." [Form CG 00 01 04 13, p. 16].

20. Union has been providing NEICC with a defense against the Underlying Matter subject to a reservation of rights.

## COUNT I
**(Declarations of Rights and Obligations Concerning the Underlying Action – The "Employer's Liability" exclusion)**

21. Union incorporates by reference paragraphs 1 through 20 of the Complaint as though fully set forth again herein.

22. This is a claim for declaratory relief concerning insurance coverage for the defense liabilities that the Underlying Action presents, and/or for the potential indemnity liabilities that it presents.

23. An actual controversy exists as to whether Union owes any coverage obligations, defense or indemnity, under the Union Policy for any of the allegations in the Underlying Action.

24. Rivera alleges that his injuries resulted from his working in NEICC's warehouse, and thus his injuries arose out of and in the course his performing duties related to the conduct of NEICC's business.

25. Rivera was provided to NEICC under the Staffing Agreement between NEICC and Monroe. NEICC retained Rivera with the intent of hiring him as a permanent employee (if he proved able to withstand the rigors of the job).

26. Union is entitled to declaration that it is not obligated to defend or indemnify NEICC against the Underlying Matter because Rivera qualifies as a "leased worker," and thus an "employee" as contemplated by the Policy's "Employer's Liability" exclusion

## PRAYERS FOR RELIEF

**WHEREFORE** the plaintiff, Union Insurance Company, respectfully requests that this Court enter an Order declaring that:

a. Union is not obligated to defend or indemnify NEICC against the Underlying Action; and

b. Union may withdraw the defense that is being provided to NEICC for the Underlying Action.

Union respectfully requests that this Court award such further relief as it deems just and proper.

**Union demands trial by jury on all issues so triable.**

Respectfully submitted,
Plaintiff,
UNION INSURANCE COMPANY,
By its attorneys,


/s/ Robert J. Maselek, Jr.
Robert J. Maselek, Jr. (BBO No. 564690)
**McDonough, Cohen & Maselek, LLP**
205B Willow Street, 2nd Floor
South Hamilton, MA 01982
Tel: (617) 742-6520
rmaselek@mcmlawfirm.com

Dated:  May 5, 2021